769 So.2d 823 (2000)
STATE of Louisiana
v.
Donald SHORT, Jr.
No. 00-KA-866.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
*825 Margaret S. Sollars, Thibodaux, Louisiana, Attorney for Defendant/Appellant, Donald Short, Jr.
Harry J. Morel, Jr., District Attorney for the Parish of St. Charles, Kim McElwee, Assistant District Attorney, Hahnville, Louisiana, Attorneys for Plaintiff/Appellee, The State of Louisiana.
Panel composed of EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.

STATEMENT OF THE CASE
On December 17, 1998, the St. Charles Parish Grand Jury returned a bill of indictment charging defendant, Donald Short, Jr., with three counts of looting in violation of La. R.S. 14:62.5 (Counts One, Two and Three), three counts of illegal possession of stolen things in violation of La. R.S. 14:69 (Counts Four, Five and Six), and one count of possession of a firearm while in possession of a controlled dangerous substance in violation of La. R.S. 14:95 E (Count Seven).[1] At his arraignment on December 17, 1998, defendant pled not guilty.
On September 8, 1999, the state amended Count Three of the indictment which originally alleged that defendant looted the house belonging to Scott St. Pierre to allege that defendant was in illegal possession of stolen things belonging to Scott St. Pierre.[2] On the same day, a twelve-member jury was selected and trial began. Prior to the commencement of trial, defendant filed a motion to quash.
*826 During the second day of trial, on September 9, 1999, outside of the presence of the jury, the trial court took up the motion to quash and thereafter denied the motion. During the trial, the state dismissed Count Six of the indictment because the state's witness failed to appear.
At the conclusion of the trial, the jury found defendant guilty as charged on Counts Three, Four and Five (illegal possession of stolen things) and on Count Seven (possession of a firearm while in possession of a controlled dangerous substance). The jury was deadlocked on Counts One and Two (the two counts of looting), and the trial court declared a mistrial on those counts.
On October 12, 1999, the trial court sentenced defendant to eight years and fined defendant $2,000 on each of the two counts of illegal possession of stolen things valued at $500 or more (Counts Three and Four) and two years on the one count of illegal possession of stolen things valued at $100 or more but less than $500 (Count Five), all to run concurrently. The trial court also sentenced defendant to ten years on the one count of possession of a firearm while in possession of a controlled dangerous substance (Count Seven) and ordered that the sentence be served without benefit of parole, probation, or suspension of sentence. The trial court also ordered that the sentence for Count Seven be served consecutively with the sentences on Counts Three, Four and Five. This appeal ensued.

FACTS
On September 26, 1998, St. Charles Parish was evacuated because of the threat from Hurricane Georges. The evacuation remained in place until September 28, 1998. During this period, several homes in the area were broken into and many items, including television sets, stereos, guns and paintings were stolen.
On October 21, 1998, the St. Charles Parish Constable, Steven Black, served an eviction at the apartment located at 602-F East Club Drive in St. Rose, which was leased to Tori Moliere. Defendant was listed on the lease as an occupant in the apartment. When the constable arrived, there was no one in the apartment. The lock was removed, and the constable entered the apartment accompanied by a deputy from the St. Charles Parish Sheriff's Office. Upon entering the apartment, they noticed several big-screen television sets, car stereos, and paintings. They also noticed several guns in the closet. There was a clear plastic bag with green vegetable matter which appeared to be marijuana found in the bedroom.
Based on the items found in the apartment, Detective Robert Lynch of the St. Charles Parish Sheriff's office was called, because it appeared that some of the items might be from burglaries he was investigating. When Detective Lynch arrived at the apartment, he recognized several of the items as having been taken from some of the victims' homes during the evacuation for Hurricane Georges. As a result of the stolen items found in the apartment, defendant was arrested.

DISCUSSION
In defendant's first assignment of error, he argues that his conviction should be overturned because the evidence presented at trial was insufficient to support a finding that he illegally possessed stolen things and that he possessed a firearm while in the possession of a controlled dangerous substance.
When an appellate court reviews a claim of insufficient evidence, the relevant inquiry is whether the trial evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In order to convict a defendant of illegal possession of stolen things, the state *827 must prove, beyond a reasonable doubt, that the defendant (1) intentionally possessed, procured, received or concealed, (2) anything of value, (3) which has been the subject of any robbery or theft, (4) where circumstances indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses. State v. Corkern, 593 So.2d 1259, 1260 (La.1992).
In cases charging a defendant with illegal possession of stolen property, the prosecution need not prove actual possession in order to support a conviction. A conviction may be supported by a showing of "constructive" possession; that is, the item being within the defendant's dominion or control. State v. Skipper, 527 So.2d 1171, 1173 (La.App. 3 Cir.1988), writ denied, 559 So.2d 132 (La.1990).
At trial, the state sought to prove that defendant possessed the stolen things found in the apartment located at 602-F East Club Drive in St. Rose when the eviction notice was served on October 21, 1998. Tori Moliere testified at trial that she leased the apartment in December of 1997, and that defendant lived in the apartment with her. Moliere testified that she moved out of the apartment in June of 1998 and defendant was still living in the apartment when she left. She further testified that when she moved out she no longer had a key to the apartment. After she moved out, Moliere returned once or twice to retrieve the rest of her things. Moliere testified that she had to call defendant to get into the apartment on these occasions because he still had the key. She testified that when she went back, defendant's personal items were still in the apartment. She also identified some letters that were found in the apartment during the eviction as letters she had written to defendant.
The state also called Joann Andry, the manager of the apartments on East Club Drive. She testified that in October of 1998, defendant was living in the apartment and that she was negotiating with him for payment of the rent which was late on the apartment. She also testified that the lease listed defendant as an occupant in the apartment. She further testified that she personally informed defendant in October of 1998 that he had two weeks to pay the rent or he would be evicted.
Defendant also testified. He admitted that Tori Moliere moved out of the apartment and he was living there by himself. He claimed that the last time he was in the apartment was in the middle of September. Defendant denied having changed the locks on the apartment or having a key to the apartment. He also testified that in September, the management kicked in the door to the apartment to fix a water leak, and that a hard push would open the door to the apartment. However, defendant admitted that a beeper, as well as other personal items in the apartment, including the letters that were found, belonged to him. Furthermore, while defendant claimed that the door could have been opened without a key, Constable Black testified that in order to gain access to the apartment during the eviction, the apartment management had to drill open a dead-bolt lock which had been added, and which could not be opened with the manager's key.
Based on the trial testimony, we find that the state presented sufficient evidence that defendant had constructive possession of the items found in the apartment.
The next two elements that the state must have proven are that defendant possessed anything of value that had been the subject of a theft or robbery. At trial, the state called Detective Robert Lynch, who identified several crime scene pictures of items found in 602-F East Club Drive at the time that the eviction notice was served. Examining the crime scene photographs on the stand, Lynch pointed out a television set, paintings, and a vacuum cleaner that were later identified as belonging to one of the victims, Scott St. Pierre.
*828 The state thereafter called Scott St. Pierre. He testified that, during the evacuation for Hurricane Georges, his house had been broken into and several items were taken. At trial, St. Pierre identified the television set that was taken from his house as shown in the Polaroid photograph that had been introduced during Detective Lynch's testimony. St. Pierre also identified the two paintings that had been taken from his house and shown in the Polaroid photographs. St. Pierre testified that the vacuum in the crime scene photograph was also taken from his home. St. Pierre testified that the television set was valued at $1,600, the paintings at $250 each, and the vacuum cleaner at $130.
Detective Lynch also testified at trial that, inside the East Club Drive apartment, a television set, a coin collection, a.22 caliber rifle, a VCR, a watch, a set of keys, and two Louisiana State Museum coins were found, which were later identified as belonging to Brian Gunckel and his father. In his testimony, Lynch identified photographs of the items that had been taken from the Gunckels and that were found inside the apartment.
The state thereafter called Brian Gunckel. He testified that he and his father evacuated their home during Hurricane Georges, and that when they returned, they found that their home had been broken into and several items were taken. Gunckel identified those items which were shown in photographs that had been previously identified by Detective Lynch as being items found in the East Club Drive apartment. Gunckel testified that the items taken from his home had a total value of approximately $1,500.
Based on this testimony, we find that the state presented sufficient evidence at trial of things of value which had been the subject of a robbery or theft.
The final element that the state must have proven is that defendant possessed the things under circumstances which indicated that he knew or had good reason to believe that the things were the subject of a robbery or theft. At trial, Gail Marshall, defendant's aunt, testified that after she returned home from the evacuation, she received calls for defendant from people looking to buy televisions or anything he had for sale. When she told defendant about the calls, he told her to tell the callers not to call anymore because he didn't trust the telephones and that he thought the telephones were tapped.
Additionally, Melissa Short, defendant's sister, testified. Ms. Short gave an earlier statement to the police when she tried to pick up defendant's car from the impound yard because defendant's car had stolen rims on it. In that statement, Ms. Short told detectives that two days after the hurricane, defendant was selling goods that had been stolen. At trial, however, Ms. Short denied that defendant was selling stolen property after the hurricane.
Jamie Robertson also testified at trial. Robertson was arrested on November 9, 1998 and charged with looting. Robertson gave a statement to police implicating himself and defendant in break-ins that occurred during the evacuation. However, Robertson claimed at trial that the statement he gave to the police was false.
Because Short and Robertson were impeached with their prior inconsistent statements regarding defendant's guilt, the jury was free to determine their credibility on the stand, and could accept or reject the retractions of their earlier statements. State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065, 1069.
Based on the referenced trial testimony, we find that the state presented sufficient evidence to show that defendant knew or had good reason to believe that, the goods in his apartment were stolen. Therefore, we find that the evidence submitted at trial, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of Counts Three and Four *829 were proven beyond a reasonable doubt. Jackson v. Virginia, supra.
However, although not argued by defense counsel on appeal, we note an error with regard to defendant's conviction by the jury of Count Five, being in possession of stolen property having a value of greater than $100, but less than $500. The property in question was a pair of six by nine car stereo speakers which belonged to Daniel Guillory. At trial, Mr. Guillory testified that his car had been burglarized and that his speakers, along with some other small items, had been taken. He identified Polaroid photographs of the speakers as belonging to him. However, the photographs of the speakers which Mr. Guillory identified were not taken at defendant's apartment. Further, Mr. Guillory did not recover his speakers from defendant's apartment. Additionally, while he testified about the property of Mr. St. Pierre and Mr. Gunckel being found in defendant's apartment, Detective Lynch did not testify regarding Mr. Guillory's speakers. Based on the foregoing, we find that the state failed to present sufficient evidence at trial that defendant possessed Mr. Guillory's speakers. Therefore, we must reverse defendant's conviction and sentence on Count Five of the indictment, as the evidence submitted at trial, when viewed in the light most favorable to the prosecution, was insufficient to convince a rational trier of fact that all of the elements of Count Five were proven beyond a reasonable doubt. Jackson v. Virginia, supra.
As stated earlier, defendant was also convicted by the jury of Count Seven, being in possession of a firearm while in possession of a controlled dangerous substance, a violation of La. R.S. 14:95 E. The Louisiana Supreme Court, in examining this statute, found that the term "possess" as used therein is broad enough to encompass both "actual" and "constructive" possession. State v. Sandifer, 95-2226 (La.9/05/96), 679 So.2d 1324, 1331. A person is in constructive possession of a thing if it is subject to his dominion and control. State v. Jackson, 97-1246 (La. App. 5 Cir.4/13/98), 712 So.2d 934, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37.
In this matter, Deputy Ronnie Hamilton, who assisted Constable Black when the eviction notice was served, testified that several guns were found inside defendant's apartment. Deputy Hamilton further testified that the green vegetative material was found in the same room in the apartment where the guns were found. The state thereafter presented the testimony of Daniel Waguespack of the Jefferson Parish Sheriff's Office, who was qualified at trial as an expert in the field of drug analysis. Waguespack tested the green vegetative material and found that the material was marijuana.
Based on the foregoing, we find sufficient evidence presented at trial to prove that defendant had constructive possession of the guns and the marijuana found in the apartment. We therefore find that the trial evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of Count Seven were proven beyond a reasonable doubt. Jackson v. Virginia, supra.
In defendant's second assignment of error, he argues that his motion to quash should have been granted by the trial court, as the state improperly accused defendant of having committed several, distinct crimes of possessing stolen property, and this should have been only one offense. Defendant argues that La. R.S. 14:69 prohibits a prosecutor from charging a defendant with separate counts of possession of stolen things and claims that the charges must be aggregated into a single count.
Defendant claims that the Louisiana Legislature chose to treat theft and possession of stolen things differently. In support of his argument, defendant cites a portion of the theft statute, La. R.S. *830 14:67(C), which provides: "When there has been a misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or taking shall determine the grade of the offense." Defendant concedes that in cases of theft, and based on 14:67(C), a prosecutor may charge a defendant with several different thefts. However, defendant argues that 14:67(C) is different from the language in 14:69, the possession of stolen things article. We disagree.
A cursory reading of La. R.S. 14:69 shows that subsection (B)(4) is almost identical to the subsection (C) in the theft article. R.S. 14:69(B)(4) provides: "When the offender has committed the crime of illegal possession of stolen things by a number of distinct acts, the aggregate of the amount of the things so received shall determine the grade of the offense."
The Louisiana Supreme Court examined a similar question under the theft statute in State v. Joles, 492 So.2d 490 (La.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). In Joles, the defendant was convicted of twenty separate counts of theft from the same victim pursuant to a continuous scheme. The defendant argued that the state was required to aggregate the thefts into a single charge. In reviewing R.S.14:67, the Joles Court held that
under Section 67 the district attorney may charge a number of distinct thefts in one count in a single bill of information, in which case the aggregate amount of the takings shall determine the grade of the single offense, but that Section 67 does not prohibit the district attorney from charging a number of distinct thefts in separate counts in either a single bill or multiple bills of information, in which case the amount of each taking determines the grade of the offense in each count.
State v. Joles, 492 So.2d at 495.
Upon review, given the similarity of the wording of the theft statute and the illegal possession of stolen things statute, we find the reasoning in Joles to apply herein. We therefore find that a district attorney may charge a defendant with multiple counts of illegal possession of stolen things. Based on the foregoing, we find that the trial court did not err in denying defendant's motion to quash.
In defendant's third assignment of error, he argues that the trial court erred in denying his motion for a continuance of trial to subpoena certain witnesses when the trial court excluded testimony sought to be brought out by the defense as hearsay.
At trial, defendant sought to produce the testimony of Detective Jimmy Roberts that during the hurricane evacuation, witnesses saw a white truck being driven by two white males in the area where the looting occurred. Asserted objected that this testimony was hearsay. The trial court refused to allow the testimony on the grounds that it was hearsay. Defendant then sought a continuance to subpoena the witnesses who saw the white truck. The trial court denied defendant's motion for continuance by finding the testimony that would be provided by the witnesses is not relevant to the case. The court noted that the witnesses did not see the men in the truck breaking into houses.
It is well settled that the granting of a continuance is discretionary on the part of the trial judge. La.C.Cr.P. art. 712; State v. Kelly, 96-903 (La.App. 5 Cir.11/12/97), 704 So.2d 800, 807-808, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142. The denial of a motion for continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Kelly, 704 So.2d at 807-808.
Motions for continuances based on the absence of a witness are governed by La. C.Cr.P. art. 709, which provides:

*831 A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
In the present case, defendant did not attempt to subpoena the witnesses who saw the white truck. During the discussion of the continuance, the state noted that defendant had the information regarding the white truck for six or seven months prior to trial. Defense counsel claimed that she did not have time to resolve the matter sooner despite having the information.
The Louisiana Supreme Court has held that the "due diligence" requirement of Article 709 is not satisfied when defense counsel fails to have the potential witness subpoenaed. State v. Terry, 359 So.2d 172, 173 (La.1978).
In addition to defense counsel's failure to subpoena the witnesses, defendant has not shown actual prejudice with regard to the trial court's denial of the motion for continuance. Defendant sought to produce the testimony of the witnesses to show that there were others who could have looted Mr. St. Pierre's house. However, defendant was not charged with looting Mr. St. Pierre's house. Defendant was charged with, and convicted of, possession of stolen things that had been taken from Mr. St. Pierre's house.
Accordingly, we find that the trial court did not abuse its discretion in denying defendant's motion for a continuance.
In his final assignment of error, defendant argues that the consecutive sentences imposed by the trial court are unconstitutionally harsh and excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992). Even a sentence which falls within statutory limits may be excessive under certain circumstances. State v. Robicheaux, 412 So.2d 1313 (La.1982). Once imposed, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Carter, 96-358 (La.App. 5 Cir.11/26/96), 685 So.2d 346.
In this matter, defendant argues that the convictions of illegal possession of stolen things and the possession of a firearm while in possession of a controlled dangerous substance arise out of the same act or transaction, and that therefore, La.C.Cr.P. art 883 applies. We disagree.
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
This article creates a presumption in favor of concurrent sentences when the convictions result from the same transaction. However, in this matter, we do not find that the convictions result from the same transaction. Three guns were recovered in the apartment, but only two guns were included in one of the counts of possession of stolen things. Also, defendant's *832 possession of the marijuana was a separate and distinct act from his possession of the stolen property. Because the convictions do not result from the same transaction, the presumption in favor of concurrent sentences under the article does not apply. We therefore find that the trial court did not abuse its discretion in sentencing defendant to consecutive terms.
The remaining issue is whether the sentences imposed are excessive. Defendant was convicted of two counts of illegal possession of stolen things valued at $500 or more, in violation of La. R.S. 14:69, which provides the following penalty clause:
(1) Whoever commits the crime of illegal possession of stolen things, when the value of the things is five hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.[3]
Defendant was sentenced to eight years and fined $2,000 on each of the two counts of illegal possession of stolen things valued at $500 or more (Counts Three and Four). Defendant was also convicted of possession of a firearm while in possession of a controlled dangerous substance, in violation of La. R.S. 14:95 E, which provides:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.
The trial court sentenced defendant to ten years on the one count of possession of a firearm while in possession of a controlled dangerous substance (Count Seven) and ordered that the sentence be served without benefit of parole, probation, or suspension of sentence. In sentencing defendant, the trial court noted that defendant acted with others in committing the crimes, and was the leader in the criminal activity. The trial court further noted that defendant had an extensive juvenile record which indicated an undue risk that defendant would continue to commit the same crimes if not incarcerated. The trial court reviewed in detail defendant's juvenile records prior to sentencing defendant.
Given defendant's extensive juvenile record and the trial court's review of the factors which he considered in setting the sentence, we find that the trial court did not abuse its discretion in imposing sentence, and that the sentence imposed is not unconstitutionally excessive.

ERROR PATENT DISCUSSION
Finally, the record was reviewed for errors patent, according to La. C.Cr.P. art. 920. We note that the trial court imposed a $2,000 fine on each conviction of possession of stolen things valued at $500 or more (Counts Three and Four). However, the commitment does not include the fine. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732, 734 (La. 1983). We therefore order that the commitment be amended to include the imposition of a $2,000 fine on each conviction of possession of stolen things valued at $500 *833 or more, so as to conform with the sentencing transcript.
Accordingly, we hereby reverse defendant's conviction and sentence as to Count Five, affirm defendant's convictions and sentences as to counts Three, Four and Seven, and remand the matter in order that defendant's commitment be amended to impose a $2,000 fine against defendant for his conviction in Count Three and impose a $2,000 fine against defendant for his conviction in Count Four.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH ORDER.
NOTES
[1] The indictment also charged Kentrell Smith and Jamie Robertson with three counts of looting, Lloyd Nelson with one count of being a principal to looting, and Melissa Short with one count of illegal possession of stolen things. Defendant was tried on the charges against him alone.
[2] A prosecutor may make substantive amendments to a grand jury indictment before trial begins. State v. Neslo, 433 So.2d 73, 81 (La. 1983).
[3] It is noted that La. R.S. 14:69 was amended by Acts 1999, No. 1251, § 1 to change the penalty provision. This is the penalty provision that was in effect at the time of sentencing.